JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
PIERCE H. STANLEY (SBN 352152)
pstanley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

GARY A. PRAGLIN (SBN 101256)
gpraglin@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, California 90405
Telephone:    (310) 392-2008
Facsimile:    (310) 392-0111

*Attorneys for Plaintiffs Dutch Girl Plaza LLC*
*and Steven H. Depper*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

**DUTCH GIRL PLAZA LLC**, a California limited liability company; **STEVEN H. DEPPER**, an individual,

        Plaintiffs,

        v.

**MARATHON PETROLEUM CORPORATION**, a Delaware Corporation; **TESORO REFINING & MARKETING COMPANY LLC**, a Delaware Limited Liability Company; **TESORO ENVIRONMENTAL RESOURCES COMPANY**, a Delaware Corporation; **TESORO SIERRA PROPERTIES, LLC**, a Delaware limited liability company; and **TESORO COMPANIES, INC.**, a Delaware Corporation,

        Defendants.

CASE NO:

**COMPLAINT:**
1) **Response Costs Under CERCLA, 42 U.S.C. Section 9607;**
2) **Declaratory Relief Under CERCLA**
3) **Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300-25395.45;**
4) **Declaratory Relief Under Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300-25395.45;**
5) **Continuing Trespass;**
6) **Continuing Private Nuisance;**
7) **Continuing Public Nuisance;**
8) **Negligence;**
9) **Negligence *Per Se***
10) **Equitable Indemnity;**
11) **Express Indemnity;**
12) **Declaratory Judgment;**
13) **Injunctive Relief; and**
14) **Violation of Proposition 65**

**DEMAND FOR JURY TRIAL**

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

## Table of Contents

Page

I.   INTRODUCTION...................................................................................1

II.  THE PARTIES...................................................................................6

     A.   PLAINTIFFS ...............................................................................6

     B.   DEFENDANTS .............................................................................6

     C.   AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS ...........................7

III. JURISDICTION AND VENUE................................................................8

IV.  INTRADISTRICT ASSIGNMENT ...........................................................9

V.   FACTUAL ALLEGATIONS...................................................................9

VI.  NOTICE...........................................................................................14

VII. CLAIMS FOR RELIEF .....................................................................16

     FIRST CLAIM FOR RELIEF
     Response Costs Under CERCLA, 42 U.S.C. § 9607(a)
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 16

     SECOND CLAIM FOR RELIEF
     Declaratory Relief Under CERCLA
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 17

     THIRD CLAIM FOR RELIEF
     Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-
     Tanner Hazardous Substances Act, California Health & Safety Code §§ 25300-
     25395.45
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 18

     FOURTH CLAIM FOR RELIEF ............................................................... 19
     Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous
     Substances Act, California Health & Safety Code §§ 25300-25395.45
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 19

     FIFTH CLAIM FOR RELIEF
     Continuing Trespass
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 20

     SIXTH CLAIM FOR RELIEF
     Continuing Private Nuisance
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 21

     SEVENTH CLAIM FOR RELIEF
     Continuing Public Nuisance
     (On Behalf of Plaintiffs Against All Defendants) ......................................... 22

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

EIGHTH CLAIM FOR RELIEF
Negligence
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 23

NINTH CLAIM FOR RELIEF
Negligence *Per Se*
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 24

TENTH CLAIM FOR RELIEF
Common Law Equitable Indemnity
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 25

ELEVENTH CLAIM FOR RELIEF
Express Indemnity
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 26

TWELFTH CLAIM FOR RELIEF
Declaratory Judgment Under State Law
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 26

THIRTEENTH CLAIM FOR RELIEF
Injunctive Relief Under State Law
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 27

FOURTEENTH CLAIM FOR RELIEF
Violation of Proposition 65
(On Behalf of Plaintiffs Against All Defendants) ...................................................... 28

VIII.  **PRAYER FOR RELIEF**..............................................................................................**28**

IX.    **JURY DEMAND**.........................................................................................................**30**

## I.    <u>INTRODUCTION</u>

1.    This case concerns a continuous and uncontrolled release of carcinogenic chemicals, specifically petroleum and its byproducts, which originated from underground storage tanks ("USTs") on Defendants' property in downtown Walnut Creek. Plaintiff Dutch Girl Plaza LLC ("Dutch Girl") and its member Plaintiff Steven H. Depper (collectively "Plaintiffs") own the adjacent lot at 2094 Mount Diablo Boulevard (the "Property").

2.    Dutch Girl has developed and gained approvals to transform its property from the current use, as a "green" eco-friendly dry-cleaning facility, into a mixed-use residential and commercial development, including low-income housing which is desperately needed in Walnut Creek. Those plans, as well as the entire redevelopment of the Walnut Creek downtown area, are now threatened by the continued migration of pollutants from Defendants' property. More important, the health of Plaintiffs' customers, employees, and all people working or living in the vicinity of Defendants' property is threatened by the ongoing carcinogenic release, the result of a botched remediation attempt by Defendants.



***Defendants' Partial Excavation of Contaminated Soil from Leaking USTs, circa 2012***

3.    By this action, Plaintiffs seek relief from Defendants' release of hazardous and carcinogenic petroleum and petroleum byproducts, including benzene, naphthalene, ethylbenzene,

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1   and waste oil, which has migrated onto the Dutch Girl Property.

2        4.      Plaintiffs seek to recover damages suffered and costs incurred, and continuing to be

3   incurred, in response to contamination migrating onto the Property from Defendants' property

4   located at 2098 Mount Diablo Boulevard, Walnut Creek, California 94956 (the "Site"), which

5   during the relevant time period for this suit was owned and/or operated by Defendants Marathon

6   Petroleum Corporation, Tesoro Refining & Marketing Company LLC, Tesoro Environmental

7   Resources Company, Tesoro Sierra Properties, LLC, and Tesoro Companies, Inc. (collectively,

8   "Defendants"). The following allegations are based upon Plaintiffs' personal knowledge with

9   respect to themselves and their own acts, and upon information and belief as to all other matters.

10       5.      The contamination migrating from the Site onto the Dutch Girl Property poses public

11  safety risks to occupants, employees, and customers of Dutch Girl Cleaners and other businesses

12  operating at the Dutch Girl Property. The underground pollutant plume also threatens to contaminate

13  drinking water aquifers in the area.



*Map Showing Attendant MTBE Vapor Risk Resulting from Prior UST Excavation*

25       6.      Defendants' botched remediation comes not only at the expense of protecting

26  neighbors and the public from toxic chemicals, but Defendants' failure to address this issue is also

27  holding back progress for housing and development in Walnut Creek.

7.      Historically, Defendants' gas station and nearby properties, including the Dutch Girl Property, were zoned for commercial use, such as a hardware store or the Dutch Girl dry-cleaning facility. However, on September 4, 2018, Walnut Creek adopted the "West Downtown Specific Plan," re-zoning these properties for mixed residential and commercial use. Property values and related real estate development in the area—on the edge of the downtown district with proximity to a regional transit hub and an interstate highway—escalated rapidly as a result.[1]



*Gas Station at 2098 Mount Diablo Blvd and Neighboring Dutch Girl Property*

8.      Recognizing the opportunity created by the rezoning, Dutch Girl's owners worked with consultants to determine the best uses for the Property given the community's needs. Ultimately, Plaintiffs developed plans to transform the Property into a mixed-use residential and commercial plaza ("Dutch Girl Plaza").

9.      Presently, Plaintiffs plan to develop Dutch Girl Plaza in accordance with the 2019 "BART Block" plan, a phase of Walnut Creek's West Downtown Specific Plan which takes into account the Property's prime location near the Walnut Creek BART station as well as proximity to Interstate-680.[2]

---

[1] City of Walnut Creek, *West Downtown Specific Plan*, Sept. 4, 2018, https://www.walnut-creek.org/home/showdocument?id=20257 (last accessed Dec. 15, 2024).
[2] *Id.*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

10.     Dutch Girl's redevelopment plan creates seventy-five residential units, including a low-income component with a ground level daycare, retail, and underground parking to meet downtown Walnut Creek's growing commercial and residential needs, while complying with state-mandated affordable housing needs.[3]



*Source: Figure 3-1, Land Use Map, West Walnut Creek Downtown Specific Plan[4]*

11.     Unfortunately, contamination at Defendants' gas station may prevent future development of the Dutch Girl Property. Inevitably, contamination that has migrated from Defendants' property onto Plaintiffs' Property will be exposed during construction, creating a toxic hazard for both workers on the Site and for the future residents of the Property.

12.     Defendants' failure to appropriately remediate and remove that contamination holds

---

[3] Andrew Nelson, *Housing Proposed at 2094 Mount Diablo Boulevard, Walnut Creek*, SF YIMBY (Aug. 18, 2024), https://sfyimby.com/2024/08/housing-proposed-at-2094-mount-diablo-boulevard-walnut-creek.html (last accessed Dec. 16, 2024).
[4] West Downtown Specific Plan, *supra* note 1, at 3-5.

back progress for development of the Dutch Girl Property as well as the entire West Downtown Walnut Creek commercial corridor. Defendants' property contamination will likely delay—if not entirely prevent—active re-development projects while continuing to harm the community with exposure to toxic chemicals.[5]

13.    Administrative action has been ineffective. Since 2015, the San Francisco Bay Regional Water Quality Control Board ("Regional Board") has refused to hear petitions from Plaintiffs regarding closure of the Site. Instead, the Regional Board has recently moved forward with closing its investigation of Defendants' Site, despite ongoing testing showing the continued presence of benzene, naphthalene, ethylbenzene, waste oil, and other petroleum byproducts.

14.    The contamination underlying the Site remains a human health threat. The same discharges and vapors detected on the Site are also underneath the Dutch Girl Property. The contamination still pollutes adjacent groundwater, including the nearby Murderer's Creek. Vapor from the contaminated soil continues to accumulate underneath and seep into buildings on the Dutch Girl Property.

15.    The residual contamination increases community exposure to toxic gases and is a threat to the safety of the community on Mount Diablo Boulevard, a major thoroughfare through Walnut Creek lined with schools, businesses, and homes.



**Map Showing Extent of Toxic Plume Originating from the Site.**

---

[5] *See* West Downtown Specific Plan, *supra* note 1.

**COMPLAINT**                                                                                     5

## II.    THE PARTIES

### A.    PLAINTIFFS

16.    Plaintiff Dutch Girl Plaza LLC ("Dutch Girl") is a California limited liability company based in Walnut Creek, California.

17.    Plaintiff Steven H. Depper ("Depper" and, collectively with Dutch Girl, "Plaintiffs") is a member of Dutch Girl and a trustee of the 2013 Depper Family Living Trust, through which he owned the Dutch Girl Property. He is a resident of Contra Costa County, California.

18.    On October 25, 2024, Steven H. Depper formed Dutch Girl Plaza LLC and subsequently transferred title of the Dutch Girl Property to Dutch Girl Plaza LLC.

### B.    DEFENDANTS

19.    Upon information and belief, Defendant Marathon Petroleum Corporation ("Marathon") is a Delaware Corporation, with its headquarters in Findlay, Ohio. Marathon engages in the business of petroleum refining, marketing, and transportation throughout the United States.

20.    Upon information and belief, on or about October 1, 2018, Marathon acquired Tesoro Corporation, a now defunct San Antonio, Texas based holding company—briefly known as "Andeavor"—which prior to its acquisition by Marathon, wholly held subsidiaries including, but not limited to, Tesoro Refining & Marketing Company LLC, Tesoro Environmental Resources Company, Tesoro Sierra Properties, LLC, and Tesoro Companies, Inc. Plaintiffs are informed and believe that Marathon acquired Tesoro Corporation's and its subsidiaries' environmental liabilities.

21.    Upon information and belief, Defendant Tesoro Refining & Marketing Company LLC ("Tesoro Refining") is a Delaware limited liability company, with its headquarters in Findlay, Ohio. Tesoro Refining refines and stores crude oil in Anacortes, Washington, and operates gasoline blending facilities, together with all related equipment, pipeline interconnections, laboratories, and ancillary facilities throughout the United States. Plaintiffs are informed and believe that Tesoro Refining is a wholly owned subsidiary of Marathon.

22.    Upon information and belief, Defendant Tesoro Environmental Resources Company ("Tesoro Resources") is a Delaware Corporation, with its headquarters in San Antonio, Texas. Plaintiff is informed and believes that Tesoro Resources is a wholly owned subsidiary of Marathon.

23.    Upon information and belief, Defendant Tesoro Sierra Properties, LLC ("Tesoro Sierra") is a Delaware limited liability company with its headquarters in San Antonio, Texas. Plaintiffs are informed and believe that Tesoro Sierra is a wholly owned subsidiary of Marathon. Plaintiffs are informed and believe that Tesoro Sierra was created in or about March 2007 for the sole purpose of acquiring title to the Site.

24.    Upon information and belief, Tesoro Companies, Inc. ("Tesoro Companies"), is a Delaware Corporation, with its headquarters in San Antonio, Texas. Plaintiffs are informed and believe that Tesoro Companies is a holding company of subsidiaries responsible for business operations at the Site during the relevant time period for this suit. Plaintiffs are further informed and believe that Tesoro Companies is a wholly owned subsidiary of Marathon.

25.    Marathon, collectively with, Tesoro Refining, Tesoro Resources, Tesoro Sierra, and Tesoro Companies, are hereinafter referred to as "Defendants."

26.    Plaintiffs are informed and believe that during the relevant time period for this suit, Defendants owned and/or operated a presently branded "Speedway Express" gasoline service station at the Site and, to this day, Defendants retain liability for environmental liabilities arising from those operations. Upon information and belief, Defendants also retain ownership of the Site.

27.    Plaintiffs are informed and believe and thereupon allege that each of the named Defendants, directly and/or through predecessors-in-interest or parent companies, has owned and/or conducted operations at the gas station adjacent to the Dutch Girl Property from which hazardous substances have been released, causing soil, vapor, and/or groundwater contamination at the Dutch Girl Property.[6]

C.    **AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS**

28.    At all times herein mentioned, Defendants, and each of them, were the agents,

---

[6] On May 14, 2021, Seven & i Holdings, Co., Ltd., the Japanese parent company of retail and convenience giant 7-Eleven, Inc., acquired all "Speedway" and "Speedway Express" branded gas stations (and associated mini-marts) in the United States, and therefore, Plaintiffs are informed and believe that Seven & i Holdings, Co., Ltd. currently operates the gas station located at the Site. However, at this time, upon information and belief, Plaintiffs are unaware of any facts suggesting that Seven & i Holdings, Co., Ltd. acquired ownership of the land at the Site or of associated environmental liabilities. Plaintiffs will timely move to amend this complaint if discovery shows this to be incorrect.

servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.

29.     In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## III.    <u>JURISDICTION AND VENUE</u>

30.     This Court has original jurisdiction over this action pursuant to Section 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9613(b), and as a federal question pursuant to 28 U.S.C. § 1331.

31.     This Court has jurisdiction over Plaintiffs' state law claims as pendant, ancillary, and supplemental to Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1367(a).

32.     In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because sufficient diversity of citizenship exists between all parties in this action, and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

33.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct substantial business within California and within this District and intentionally availed themselves of the laws and markets of this state. A significant portion of the acts and omissions at issue occurred in California, and Plaintiffs suffered harm in California. Plaintiffs' claims against Defendants are meaningfully connected to California in that the property at issue in this case is located in Walnut Creek, California.

34.     Venue is proper in the United States District Court for the Northern District of California because the release of hazardous substances and the damage caused thereby occurred in this District. Both the Dutch Girl Property and the Site lie within this District, and Defendants

1  conducted business in and engaged in substantial activities in this District.

2  **IV.    INTRADISTRICT ASSIGNMENT**

3       35.    Assignment to the Oakland Division is proper pursuant to Northern District of

4  California Civil Local Rules 3-2(c) and (d) because a substantial part of the events or omissions

5  giving rise to Plaintiffs' claims asserted herein occurred in Contra Costa County, and under Civil

6  Local Rule 3-2(e), all civil actions which arise in Contra Costa County shall be assigned to the

7  Oakland Division.

8  **V.    FACTUAL ALLEGATIONS**

9       36.    Dutch Girl Cleaners is a family-owned business that has been serving the Walnut

10  Creek area for over four decades. In 2000, Depper acquired the property at 2094 Mount Diablo

11  Boulevard, Walnut Creek, California 94956 and operated the property as Dutch Girl Cleaners' new

12  facility. The property has since been transferred to Dutch Girl.

13       37.    Before Depper purchased the Dutch Girl Property, on or about December 15, 1999,

14  a Phase I Site Assessment was conducted for the seller, Gary Schumm, by the Denali Group. The

15  Phase I Assessment found no environmental conditions of concern and did not recommend any

16  further environmental investigation activities at the Dutch Girl Property. The Dutch Girl Property

17  was subsequently developed as a location for Plaintiffs' business and various retail tenants. The

18  Dutch Girl Property is currently occupied by Dutch Girl Cleaners and an Ace Hardware office.

19       38.    According to a removal report prepared for the Kayo Oil Group in 1987 by Alpha

20  Geotechnical Consultants, Inc., a leaking underground storage tank containing waste oil was

21  removed on or about October 2, 1987, from the Site by Conoco, Inc., when the station was operated

22  as an "Econo" gas station. The removal report identified oil, grease, and diesel contamination in the

23  soil. Shortly thereafter, an unauthorized release of gasoline was also discovered at the Site.

24       39.    Plaintiffs are informed and believe that after the contamination was discovered in

25  1987, Ultramar, Inc. ("Ultramar") acquired the Site, and operated the Site as a "Beacon" service

26  station. At Ultramar's direction, Delta Environmental Consultants, Inc. collected soil samples and

27  investigated the 1987 release for nearly a decade under the oversight of the San Francisco Regional

28  Water Quality Control Board. On June 11, 1997, the Regional Board closed its investigation of the

1    1987 tank removal.

2        40.    Plaintiffs are informed and believe that when Plaintiffs first acquired ownership of

3    the Dutch Girl Property in or about the year 2000, contamination at the neighboring Site remained

4    present at levels equal to or greater than described in the Regional Board's 1997 closure report.

5        41.    Since then, Plaintiffs have submitted multiple petitions to the Regional Board's

6    members and Chief Counsel regarding the closing of the Site investigation. In these petitions,

7    Plaintiffs alleged that residual contaminated soil from the removal process remained on the Site, and

8    the contaminated soil became—and remains—a source for soil and groundwater contamination

9    beneath the Dutch Girl Property.

10        42.    Plaintiffs' petitions and communications to the Regional Board allege that the

11    contamination beneath the Dutch Girl Property is extensive both laterally and vertically. The

12    Regional Board has ignored these facts in its attempts to close subsequent, ongoing investigations

13    of the Site.

14        43.    In or about January 2004, Arctos Environmental ("Arctos"), at the direction of Tesoro

15    Companies, conducted a Phase II environmental investigation that included six soil borings on the Site.

16    Three of the borings were converted to groundwater monitoring wells, and sampling results showed that

17    groundwater beneath the Site was still impacted by petroleum hydrocarbons from unauthorized releases

18    from the previous leaking USTs. Arctos found that chemicals of concern in soil and groundwater

19    included total petroleum hydrocarbons as gasoline ("TPHg"), benzene, toluene, ethylbenzene, total

20    xylenes ("BTEX compounds"), and methyl tert-butyl ether ("MTBE").

21        44.    In or about October 2004, the Regional Board determined that the groundwater at the

22    Site was contaminated with petroleum byproducts, including benzene, diesel, and TPH. Dissolved

23    benzene in groundwater was identified at 4,300 parts per billion ("ppb") and dissolved MTBE was

24    identified at 2,400 ppb.

25        45.    Following the 2004 discovery, the Regional Board ordered Tesoro Companies to

26    conduct further investigation, led by Arctos, to determine the lateral and vertical extent of the

27    contamination. That investigation continues to this day, and the actual scope and nature of the soil

28    and groundwater contamination remains undefined while the toxic health hazards from these

chemical wastes persist.

46.    In or about 2007, Defendants requested, and Plaintiffs agreed to allow the installation of groundwater monitoring wells on the Dutch Girl Property. At that time, Plaintiffs first learned that the contamination from Defendants' property had migrated under Plaintiffs' own property, including into the groundwater. The Regional Board has determined that the presence of benzene and TPH in the groundwater under the Dutch Girl Property is attributable to the Site.



*Groundwater Monitoring Well on the Dutch Girl Property*

47.    On September 20, 2007, Depper entered into a Right of Entry Agreement for Boring and Well Installation at the Dutch Girl Property (the "2007 Right of Entry Agreement") with Tesoro Resources. The purpose of the 2007 Right of Entry Agreement was for Tesoro Resources to install groundwater monitoring wells to monitor, maintain, sample, and collect water samples at the Dutch Girl Property to determine the scope of the contamination and perform required remediation. The 2007 Right of Entry Agreement provided, in pertinent part, as follows:

> Tesoro [Resources] agrees to indemnify, defend and hold you and your heirs, successors, assigns, spouse, children, and partners harmless from and against all liabilities, losses, claims, demands, orders, causes of action, damages, costs or expenses arising out of or relating to (a) Tesoro's activities on the Property

including the installation and sampling of the soil borings and monitoring well at the Property (b) any groundwater contamination migrating onto the Property from the Tesoro Property, and (c) any PETROLEUM soil or groundwater contamination WHICH DID NOT ORIGINATE ON THE PROPERTY…found as a result of the investigation.

48.    At the same time it executed the 2007 Right of Entry Agreement, Tesoro Resources sent Depper a letter stating, in pertinent part, as follows:

> Tesoro Environmental Resources Company (Tesoro) retains environmental responsibility for soil and groundwater cleanup at the retail gasoline service station located at 2098 Mt. Diablo Boulevard (the Site), adjacent to your property located at 2094 Mt. Diablo Boulevard, California (the Property). Tesoro appreciates your cooperation in completing the Right of Entry Agreement for the referenced Property, attached hereto. The business interruption compensation for this Access Agreement has been forwarded to you under separate cover.

49.    Subsequently, Depper entered into two additional Right of Entry Agreements with Tesoro Resources, one in or about October 2008, and another in or about September 2016. Both allowed Tesoro Resources access to the Dutch Girl Property to conduct the necessary investigation and remediation. The 2008 and 2016 Right of Entry Agreements also contain indemnity provisions almost identical to the one quoted above from the 2007 Right of Entry Agreement.

50.    On or about June 16, 2010, Tesoro sent a letter to Depper admitting responsibility for the groundwater contamination at the Dutch Girl Property. That letter states, in pertinent part, as follows:

> The purpose of this letter is to affirm Tesoro Environmental Resources Company's (Tesoro's) commitment to remediate current soil and groundwater impacts at the commercial establishment known as Dutch Girl Cleaners located at 2094 Mt. Diablo Blvd., Walnut Creek, CA 94596 (the 'Property').

51.    Plaintiffs are informed and believe that remediation efforts in the 1980s, 1990s, and early-to-mid 2000s left in place soil contamination, including benzene and TPH, well above regulatory action levels.

52.    Upon information and belief, on or about November 2012, Tesoro Resources again retained Arctos to remediate gasoline-impacted soil and groundwater on the Site during routine gas station improvement activities and to excavate further unsaturated and saturated soil encountered during the removal of former USTs and dispensers.

53.    Plaintiffs are informed and believe that subsequent excavations in 2012 to remove

USTs and extract contaminated soil failed to fully remediate the contamination, which has come into direct contact with shallow groundwater beneath the Site and is migrating onto the Dutch Girl Property.

54.     In or about 2017, the Regional Board took steps to close the 2012 UST removal investigation, despite information Dutch Girl provided, including a detailed presentation on the ongoing health risks from continued contamination of the Site and the Dutch Girl Property.

55.     Upon information and belief, Plaintiffs allege that on or about February 26, 2023, Proposition 65 chemicals originating from the Site were discovered in concentrations in the indoor air of the Dutch Girl building and were determined to pose human health risks by inhalation to workers and tenants via vapor intrusion indoors.[7]

56.     To date, Dutch Girl continues to advocate to the Regional Board that this finding is but one more indication that the Site is contaminated, the 2024 UST closure was made in error, and the Site still poses further specific health risks to the wider community.

57.     Despite Defendants' repeated assurances for over a decade that they would address the contamination at the Dutch Girl Property, the contamination remains to this day. Defendants have failed to take adequate and effective steps to address it, instead repeatedly delaying remediation efforts. At all times relevant herein, Defendants, and each of them, concealed and omitted relevant facts that would have allowed Plaintiffs to discover the true nature and degree of the soil and groundwater contamination issues. As a result of these misrepresentations and omissions, equitable tolling of the statute of limitations applies as to the claims asserted by Plaintiffs. Any applicable statute of limitations that might otherwise bar certain of the claims at issue should be tolled because Defendants, and each of them, actively misled Plaintiffs through affirmative representations and omissions with respect to the true nature, quality, and hazards of the contamination and Defendants' incomplete and inadequate remediation attempts as described herein and above.

58.     Plaintiffs exercised due diligence to discover Defendants' wrongdoings. However,

---

[7] On June 24, 2024, the Regional Board closed the Site despite Dutch Girl's numerous technical, legal, and regulatory objections.

**COMPLAINT**                                                                                          13

such wrongdoing and/or the full extent and degree of such wrongdoing was not reasonably discoverable prior to the date of the filing of this action and/or prior to the statutory period for the filing of this action. Because Defendants, and each of them, concealed their wrongdoing through misrepresentations and omissions, Plaintiffs exercised due diligence by promptly filing this Complaint after discovering the facts giving rise to these claims.

59.     During this time, each of the Defendants was or should have been aware of the contamination at the Site, and knew or should have known that the contamination was migrating towards the Dutch Girl Property, which was less than one hundred feet from the Site. Defendants knew or should have known that the contamination posed a threat to the health and safety of occupants, employees, and visitors to the Dutch Girl Property and threatened the health and safety of the community.

60.     Defendants have a statutory obligation to remediate the contamination and prevent it from migrating from the Site. To date, Defendants have failed to clean up the contamination at the Site and to prevent the migration of contamination onto the Dutch Girl Property.

61.     As a result, Plaintiffs have incurred, and continue to incur, substantial costs because the contamination caused by releases from the Site has been migrating and continues to migrate onto the Dutch Girl Property and threatens substantial harm to the Dutch Girl Property, delays Plaintiffs' and the surrounding community's re-development plans, and continues to pose potential risks to Dutch Girl's employees and customers which must be addressed now.

## VI.   **NOTICE**

62.     The California Safe Drinking Water and Toxic Enforcement Act of 1986 is an initiative statute passed as "Proposition 65" by a vote of the people in November of 1986.

63.     The warning requirement of Proposition 65 is contained in California Health and Safety Code Section 25249.6, which provides: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the State to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."

64.     An exposure to a chemical in a consumer product is one "which results from a

person's acquisition, purchase, storage, consumption, or other reasonably foreseeable use of a consumer good, or any exposure that results from receiving a consumer service." (Cal. Code Regs., Tit. 22, § 12601(b).).

65.     Proposition 65 establishes a procedure by which the state is to develop a list of chemicals "known to the State to cause cancer or reproductive toxicity." (Cal. Health & Saf. Code, § 25249.8.) No warning need be given concerning a listed chemical until one year after the chemical first appears on the list. (*Id.*, § 25249.10, (b).).

66.     Benzene was placed in the list of chemicals known to the State of California to cause cancer on February 27, 1987. (Cal. Code Regs., Tit. 27, § 27001(b).).

67.     Any person "violating or threatening to violate" the statute may be enjoined in any court of competent jurisdiction. (Cal. Health & Saf. Code, § 25249.7.) To "threaten to violate" is defined to mean "to create a condition in which there is substantial probability that a violation will occur." (*Id.*, § 25249.11, subd. (e).) In addition, violators are liable for civil penalties of up to $2,500 per day for each violation, recoverable in a civil action. (*Id.*, § 25249.7(b).)

68.     Private parties are given authority to enforce Proposition 65 "in the public interest," but only if the private party first provides written notice of a violation to the alleged violator, the Attorney General, and every District Attorney in whose jurisdiction the alleged violation occurs. If no public prosecutors commence enforcement within sixty days, then the private party may sue. (Cal. Health & Saf. Code, § 25249.7(d).).

69.     On October 25, 2018, Depper caused to be issued a "60-Day Notice of Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65)" to Defendants Marathon, Tesoro Refining, Tesoro Resources, Tesoro Sierra, and Tesoro Companies.

70.     This notice, sent pursuant to California Health and Safety Code Section 25249.7(d)(1), informed these parties that Plaintiffs intended to bring suit against them for violations of Proposition 65. As required, a copy of the notice was also sent to the California Attorney General and the Contra Costa County District Attorney, among others.

/ / /

/ / /

VII.    **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Response Costs Under CERCLA, 42 U.S.C. § 9607(a)**

**(On Behalf of Plaintiffs Against All Defendants)**

71.     Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

72.     Each of the Defendants is a "person," as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

73.     The Dutch Girl Property and the Site are "facilities," as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

74.     Upon information and belief, Defendants are the current "owners" and/or "operators" of the Site, at which a "release" of hazardous substances occurred, as those terms are defined in Section 101(20)(A) and (22) of CERCLA, 42 U.S.C. §§ 9601(20)(A), 22.

75.     Volatile organic compounds ("VOCs") are "hazardous substances," as these terms are defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

76.     In connection with the releases described herein, Plaintiffs have incurred and will continue to incur necessary costs of investigation and response consistent with the National Contingency Plan ("NCP"), including but not limited to, investigating the scope and nature of the contamination, and testing soil and groundwater.

77.     As a direct result of the release and disposal of the hazardous substances as alleged above, Plaintiffs have incurred investigation and response costs consistent with NCP, and will continue to incur necessary investigation, response, and monitoring costs in the future. The amount of these necessary costs is not precisely ascertainable at this time, and Plaintiffs makes their claim according to proof at trial.

78.     Defendants, and each of them, are liable under 42 U.S.C. § 9607 because they are the current "owners" and/or "operators" of the Site or have contractually agreed to retain responsibility for remediation of the Site.

79.     Plaintiffs are therefore entitled to recover from Defendants past, present, and future

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

all investigation, response, and monitoring costs, including attorneys' fees, interest and court costs pursuant to CERCLA, including, but not limited to, 42 U.S.C. § 9607(a).

### SECOND CLAIM FOR RELIEF

### Declaratory Relief Under CERCLA

### (On Behalf of Plaintiffs Against All Defendants)

80. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

81. An actual controversy exists between Plaintiffs and Defendants in that Plaintiffs contend, and Defendants deny, that under the circumstance alleged above Defendants are liable for the response costs incurred by Plaintiffs to investigate the contamination on the Dutch Girl Property.

82. Plaintiffs are entitled to and hereby seek a determination, pursuant to CERCLA, 42 U.S.C. § 9613(g)(2), of Defendants' liability to Plaintiffs for the response costs incurred and to be incurred by Plaintiffs in connection with the presence of hazardous substances on the Dutch Girl Property.

83. Plaintiffs are entitled to and hereby seek a judicial determination of their right to reimbursement and indemnification from Defendants for costs Plaintiffs may incur in investigating contamination on the Dutch Girl Property. Plaintiffs are informed and believe that Defendants deny such allegations.

84. Substantial costs have been and will be incurred by Plaintiffs over time and after conclusion of this action. Unless declaratory relief is granted, it will be necessary for Plaintiffs to commence successive actions against Defendants to secure compensation for the costs incurred and damages sustained, resulting in a multiplicity of suits.

85. A declaratory judgment is appropriate for the following reasons:

   a. A declaratory judgment will prevent the need for multiple lawsuits as Plaintiffs incur response costs in the future for which Defendants should be liable and will provide a final resolution of the issues between the parties regarding liability for said costs.

   b. A declaratory judgment will assure Plaintiffs that they will be reimbursed by

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Defendants for the necessary response costs incurred, ensuring a proper response to the environmental contamination present on the Dutch Girl Property.

c. The public interest will be served in that a declaratory judgment will prevent a multiplicity of actions and will promote an environmentally proper response.

### THIRD CLAIM FOR RELIEF

**Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-Tanner Hazardous Substances Act, California Health & Safety Code §§ 25300-25395.45**

**(On Behalf of Plaintiffs Against All Defendants)**

86. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

87. Plaintiffs are a "person" as defined in the Carpenter-Presley-Tanner Hazardous Substances Act, California Health & Safety Code Section 25319. Plaintiffs have incurred and/or will continue to incur substantial response costs to investigate the nature and scope of the VOC contamination and remediate VOC contamination migrating from the Site to the Dutch Girl Property. All such response costs have been necessary and consistent with the National Contingency Plan ("NCP").

88. Defendants are "responsible parties" within the meaning of California Health and Safety Code Section 25323.5.

89. California Health and Safety Code Section 25363(e) imposes liability on any "responsible party" who is the owner or operator of a facility or was the owner or operator of any facility at which such hazardous substances were disposed of, arranged for the disposal of hazardous substances, or arranged with a transporter for transport of disposal of hazardous substances owned or possessed by such persons for the response costs incurred.

90. Defendants' disposal of hazardous substances at the Site constitutes a release or threatened release of hazardous substances at a facility within the meaning of the Carpenter-Presley-

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Tanner Hazardous Substances Act.

91.    As a direct and proximate result of the releases or threatened releases of hazardous substances from Site, Plaintiffs have incurred and will continue to incur response costs consistent with the NCP.

92.    As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to recover past, present, and future response costs together with interest from Defendants pursuant to California Health and Safety Code Section 25363(e).

### FOURTH CLAIM FOR RELIEF

**Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous**

**Substances Act, California Health & Safety Code §§ 25300-25395.45**

**(On Behalf of Plaintiffs Against All Defendants)**

93.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

94.    An actual controversy exists between Plaintiffs and Defendants regarding their respective rights and obligations concerning necessary response costs under California Health and Safety Code Section 25363(e).

95.    Plaintiffs assert that Defendants, as the current owners and/or operators of the Site, or as entities contractually liable, are responsible for all necessary response costs incurred in connection with the investigation, testing, removal, and other remediation or monitoring of the hazardous substances on the Dutch Girl Property.

96.    Plaintiffs desire a judicial determination that Defendants are strictly liable to Plaintiffs for all such necessary costs.

97.    Such a declaration is necessary and appropriate at this time, although due to the continuing nature of Defendants' releases, Plaintiffs anticipate they will likely incur future response costs and will likely be required to undertake future response actions necessitated by Defendants' releases for which Defendants should be strictly liable.

/ / /

/ / /

## FIFTH CLAIM FOR RELIEF

### Continuing Trespass

### (On Behalf of Plaintiffs Against All Defendants)

98.     Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

99.     Plaintiffs are informed and believe and based thereon allege that at all material times, Defendants allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants located on the Site to migrate into the soil and groundwater under the Dutch Girl Property. Defendants have no lawful right, authority or consent to dispose or cause the disposal of hazardous substances, including the disposal of VOC contamination, onto the Dutch Girl Property.

100.     Defendants by their wrongful disposal of pollutants onto the Dutch Girl Property and their intentional and reckless failure to clean up the contamination have unlawfully interfered and continue to interfere with Plaintiffs' exercise of their rights to use and enjoyment of the Dutch Girl Property.

101.     The trespass caused by the migration of the VOC contamination from the Site to the Dutch Girl Property can be abated at a reasonable cost.

102.     As an actual and proximate result of Defendants' intentional and unlawful trespass, Plaintiffs have incurred costs and suffered damages, and will continue to incur costs and suffer damages, until the investigations and cleanup of the Dutch Girl Property are complete and until Defendants clean up the contamination existing at the Site and migrating from the Site.

103.     Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, including the Dutch Girl Property, which is downslope and less than 100 hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

104.     Despite knowing all this for many years, Defendants delayed and avoided cleanup or abatement of contamination at the Site.

### SIXTH CLAIM FOR RELIEF

**Continuing Private Nuisance**

**(On Behalf of Plaintiffs Against All Defendants)**

105.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

106.    Plaintiffs are informed and believe that at all material times, Defendants intentionally and recklessly allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants, including petroleum, located on the Site to migrate into the soil and groundwater on the Dutch Girl Property.

107.    The VOC contamination migrating from the Site to the Dutch Girl Property constitutes a continuing nuisance. The VOC contamination has interfered, and continues to interfere, with Plaintiffs' use and enjoyment of the Dutch Girl Property.

108.    The continuing nuisance caused by the migration of the VOC contamination from the Site to the Dutch Girl Property can be abated at a reasonable cost.

109.    As an actual and proximate result of the continuing nuisance created by Defendants, Plaintiffs have incurred costs and suffered damages, and will continue to incur costs and suffer damages, until the investigation and cleanup of the Dutch Girl Property is complete.

110.    Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, including the Dutch Girl Property, which is downslope and less than one hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

111.    Despite knowing all this for many years, Defendants delayed and avoided cleanup or abatement of contamination at the Site.

/ / /

/ / /

/ / /

# SEVENTH CLAIM FOR RELIEF

## Continuing Public Nuisance

### (On Behalf of Plaintiffs Against All Defendants)

112.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

113.    Groundwater within the State of California, including the groundwater underlying the Dutch Girl Property and the Site, constitutes "waters of the state" pursuant to California Water Code §13050(e).

114.    As stated in California Water Code § 13000, the California Legislature has declared that "the people of the state have a primary interest in the conservation, control and utilization of water resources of the state, and that the quality of all waters of the state shall be protected for use and enjoyment by the people of the state."

115.    Plaintiffs are informed and believe that at all relevant times, Defendants allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants that had been released onto the Site to migrate into the soil and groundwater on, adjacent to and underlying the Dutch Girl Property and into the waters of the State of California.

116.    The hazardous substances and contaminants are carcinogens, reproductive toxins, and/or are otherwise highly toxic to plant and animal life, and their release into the soil and groundwater constitutes a public nuisance within the meaning of California Civil Code §§ 3479 and 3480. The hazardous substances and contaminants have migrated, and are continuing to migrate, into the waters of the state and the environment and are damaging the public natural resources of the State of California.

117.    While this public nuisance affects a considerable number of persons, it has caused special injury to Plaintiffs because the hazardous substances and contaminants that Defendants released and allowed to migrate, continue to migrate primarily to the soil and groundwater on and underlying the Dutch Girl Property.

118.    Plaintiffs are informed and believe and based thereon allege that the contamination caused by the nuisance can be abated at a reasonable cost.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

119.    As a direct and proximate result of the continuing nuisance maintained by Defendants, Plaintiffs have incurred costs and suffered damages in remediating the environmental conditions at the Dutch Girl Property and will continue to incur costs and suffer damages until the environmental condition of the Dutch Girl Property has been fully remediated and the migration of hazardous substances and other contaminants from the Site to the Dutch Girl Property has ceased.

120.    Plaintiffs are therefore entitled to an award of damages according to proof at trial and an order requiring Defendants to abate the nuisance in accordance with all applicable laws, regulations and orders.

121.    Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, which including the Dutch Girl Property, which is downslope and less than 100 hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

122.    Despite knowing all this for many years, Defendants delayed and avoided cleanup of the contamination at the Site.

## EIGHTH CLAIM FOR RELIEF

### Negligence

### (On Behalf of Plaintiffs Against All Defendants)

123.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

124.    Defendants owe Plaintiffs a continuing duty to prevent the hazardous substances situated on the Site from spilling onto and contaminating the Dutch Girl Property in a manner that causes Plaintiffs to sustain damages and losses.

125.    Defendants breached their duty to Plaintiffs, and continue to breach their duty to Plaintiffs, by negligently owning, maintaining, controlling, managing, and operating the Site so as to cause the hazardous substances situated on the Site to migrate onto and contaminate the Dutch Girl Property, and by intentionally and recklessly failing to timely clean up the contamination.

126.    Defendants, by failing to exercise reasonable care in the conduct of the ownership and operation of the Site, and by their continuing failure to exercise reasonable care to abate the hazardous and dangerous conditions at that property, proximately caused and will continue to cause Plaintiffs to investigate, identify, and remove the hazardous substances and other contaminants at the Dutch Girl Property and to incur significant response costs in undertaking each of these activities, unless and until the contamination is cleaned up.

127.    Plaintiffs have been damaged by being forced to incur significant response costs in response to Defendants' negligence in an amount yet unknown, for which Plaintiffs make claim according to proof at trial.

128.    The damages and losses sustained by Plaintiffs were caused solely by Defendants' negligence, without any fault of Plaintiffs contributing thereto. Therefore, Plaintiffs are entitled to recover from Defendants the full amount of their damages.

## NINTH CLAIM FOR RELIEF

### Negligence *Per Se*

### (On Behalf of Plaintiffs Against All Defendants)

129.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

130.    Defendants' continued failure to exercise reasonable care in controlling the release of hazardous substances and other contaminants violates numerous state and federal statutes, rules and regulations, including but not limited to, California Health & Safety Code §§ 25189 and 25189.6, and California Water Code §§ 13271 and 13304.

131.    As a direct and proximate result of Defendants' failure to exercise reasonable care and continued failure to exercise reasonable care in controlling the release of hazardous substances and other contaminants at the Site and onto the Dutch Girl Property, the Dutch Girl Property has been contaminated and continues to be contaminated by migration of the hazardous substances from the Site.

132.    The purpose of the aforementioned statutes is to set a standard of care or conduct to protect Plaintiffs, their employees, customers, and others at the Dutch Girl Property, as well as the

environment, from the type of improper activities engaged in by Defendants. Therefore, Defendants'
improper activities and violations constitute negligence *per se*.

133.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs have
suffered damages, including other consequential, incidental, and general damages to be proven at
trial.

### TENTH CLAIM FOR RELIEF

### Common Law Equitable Indemnity

### (On Behalf of Plaintiffs Against All Defendants)

134.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set
forth herein.

135.    Plaintiffs have conducted investigations and incurred response costs for which
Defendants are primarily liable.

136.    Defendants, by failing to remediate the hazardous substances and other contaminants
existing on the Site and by permitting these hazardous substances and contaminants to migrate onto
the Dutch Girl Property, are liable for the presence and release of the hazardous substances and other
contaminants onto the Dutch Girl Property.

137.    Any liability or potential liability of Plaintiffs due to the presence of hazardous
substances and other contaminants at the Dutch Girl Property is the sole and proximate result of the
improper handling, use, storage, disposal, and/or release by Defendants of hazardous substances and
other contaminants at the Site. Due to such improper handling, use, storage, disposal, and release,
the hazardous substances and other contaminants migrated from the Site to the Dutch Girl Property.

138.    Defendants' improper handling, use, storage, disposal and release of hazardous
substances and other contaminants at the Site gave rise to a duty on the part of Defendants to
investigate and remove or remedy the hazardous condition created by their conduct.

139.    Defendants have failed and continue to fail to recognize their equitable obligation to
assume responsibility for the investigation, removal and/or remediation of the hazardous substances
and hazardous wastes which have contaminated the Dutch Girl Property.

140.    Plaintiffs have incurred costs as a consequence of Defendants' improper handling,

use, storage, disposal, and release of hazardous substances and contaminants, and are therefore entitled to be indemnified by Defendants for their past, present, and future costs for the investigation and testing of the hazardous substances and other contaminants at the Dutch Girl Property, including attorneys' fees, incurred because of Plaintiffs' duties and obligations arising under state and federal law.

## ELEVENTH CLAIM FOR RELIEF

### Express Indemnity

### (On Behalf of Plaintiffs Against All Defendants)

141.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

142.    Plaintiffs, through Depper, entered into three separate Right of Entry Agreements with Tesoro Resources.

143.    The Right of Entry Agreements specifically provide that Tesoro Resources will indemnify Plaintiffs for, among other things, all damages, costs and expenses arising out of, or relating to, the soil and groundwater contamination at the Dutch Girl Property.

144.    Plaintiffs have performed all conditions, covenants, and promises required of it under the Right of Entry Agreements.

145.    Tesoro Resources has thus far failed to perform the obligations it assumed in the Right of Entry Agreements, including by failing to indemnify Plaintiffs for the damages, costs, and expenses relating to and arising from the contamination at the Dutch Girl Property.

146.    Plaintiffs are entitled to contractual indemnity from Tesoro Resources for all expenses, costs, and damages arising out of and/or relating to the soil, gas, and/or groundwater contamination on the Dutch Girl Property that has migrated from the Site.

## TWELFTH CLAIM FOR RELIEF

### Declaratory Judgment Under State Law

### (On Behalf of Plaintiffs Against All Defendants)

147.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

148.    Plaintiffs are informed and believe that an actual controversy has arisen and now exists between Plaintiffs and Defendants in that Plaintiffs contend and, upon information and belief, Defendants deny, that responsibility for the hazardous substances and other contaminants caused or permitted to come onto the Dutch Girl Property rests solely and entirely upon Defendants.

149.    Plaintiffs have incurred and will continue to incur necessary response costs, including, but not limited to, investigatory expenses, attorneys' fees, and interest in remediating the Dutch Girl Property.

150.    Plaintiffs seek a declaration of the rights and obligations of the parties, binding in any subsequent action or actions to recover necessary response costs and other damages incurred and to be incurred by Plaintiffs in connection with the releases, threatened releases, spills, disposals, discharges of hazardous substances, and other contaminants that have and will pollute the Dutch Girl Property in the manner previously referenced. Such a declaration will prevent multiple future actions to determine the rights and obligations of the parties.

## THIRTEENTH CLAIM FOR RELIEF

### Injunctive Relief Under State Law

### (On Behalf of Plaintiffs Against All Defendants)

151.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

152.    Defendants have wrongfully and unlawfully permitted hazardous substances and other contaminants to be released onto the Site, which subsequently migrated and continue to migrate onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

153.    Plaintiffs hereby demand that Defendants stop delaying the remediation of hazardous substances and other contaminants on the Site and stop allowing the hazardous substances and other contaminants contained thereon to be released onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

154.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Plaintiffs. As long as hazardous substances and other contaminants remain on the Site they will continue to migrate to Plaintiffs' property, and

Plaintiffs' employees, customers, and tenants will remain at risk of exposure to the hazardous substances and other contaminants.

155.    Plaintiffs have no adequate remedy at law because unless and until Defendants stop allowing the hazardous substances and other contaminants on the Site to be released onto Dutch Girl Property and into the underlying groundwater, Plaintiffs cannot be assured the contamination has been remediated and will remain at a safe level. This will result in further irreparable harm to Plaintiffs.

**FOURTEENTH CLAIM FOR RELIEF**

**Violation of Proposition 65**

**(On Behalf of Plaintiffs Against All Defendants)**

156.    Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

157.    Additionally, Plaintiffs repeat and reallege the notice provision set forth above as if set forth fully herein.

158.    By committing the acts alleged above, Defendants in the course of doing business knowingly and intentionally exposed individuals in California to chemicals known to the State of California to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individuals, within the meaning of California Health and Safety Code Section 25249.6.

159.    Said violations render Defendants liable to Plaintiff for civil penalties not to exceed $2,500 per day for each violation, as well as other remedies.

**VIII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

1.    For response costs and other damages incurred by Plaintiffs under CERCLA including reasonable attorneys' fees and interest against all Defendants;

2.    For a judicial declaration under CERCLA that Defendants are liable for all future response costs incurred by Plaintiffs and other costs that may be incurred by Plaintiffs in connection with the Dutch Girl Property against all Defendants;

3.    For response costs and other damages under the Carpenter-Presley-Tanner Hazardous

Substances Act incurred by Plaintiffs, including prejudgment interest allowed by law against all Defendants;

4.    For a judicial declaration under the Carpenter-Presley-Tanner Hazardous Substances Act that Defendants are liable for all future response costs and other costs that may be incurred by Plaintiffs in connection with the Dutch Girl Property against all Defendants;

5.    For general, consequential and incidental damages, in an amount to be proven at trial, caused by Defendants' continuing private nuisance, continuing public nuisance, continuing trespass, negligence and negligence *per se* against all Defendants;

6.    For equitable indemnification against all Defendants;

7.    For express indemnity against Defendants;

8.    For a judicial declaration that Defendants caused the contamination at the Dutch Girl Property and are liable for its total cost of remediation against all Defendants;

9.    For a preliminary injunction and a permanent injunction enjoining all Defendants, their agents, servants, and all persons acting under, in concert with, or for the Defendants, from: (a) failing to prevent contamination of the Dutch Girl Property; and (b) failing to remediate the hazardous substances and other contaminants contained on the Dutch Girl Property;

10.    For the reasonable amount of attorneys' fees and costs expended in recovering response costs and for the reasonable fees required to retain experts and consultants against all Defendants;

11.    For Plaintiffs' expenditure of costs to investigate and monitor the hazardous substances and other contaminants that Defendants have allowed to migrate through the soils and groundwater of the Site and onto the Dutch Girl Property, which will confer a significant benefit on the general public to protect and restore natural resources within the public trust.

12.    Therefore, Plaintiffs pray for all reasonable attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5 against all Defendants;

13.    For punitive damages and exemplary damages against all Defendants;

14.    For civil penalties under Proposition 65 against Defendants;

15.    For such other and further relief which the Court may deem just and proper.

1

## IX.  <u>JURY DEMAND</u>

2      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues

3   so triable.

4   Dated: February 10, 2025                     Respectfully submitted,

5                                                **COTCHETT, PITRE & McCARTHY, LLP**

6

7                                       By:     <u>*/s/ Julie L. Fieber*</u>

8                                               GARY A. PRAGLIN
                                                JULIE L. FIEBER
                                                BRIAN DANITZ
9                                               PIERCE H. STANLEY

10
                                                *Attorneys for Plaintiffs Dutch Girl Plaza LLC*
11                                              *and Steven H. Depper*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP